I'm going to the next case on the calendar, please. I'm going to borrow your calendar, Judge Anton. I think that's yours, actually. Mine's lost. Well, I've got another one. The next case on the calendar is Brown, and it is 21-55393, Brown v. Department of Children Services. Thank you so much. Mr. Peters, is that you on the video? Yes, Your Honor. Great. I just wanted to do a sound check. You can hear us okay and see us okay? Yes, I can. Okay, that sounds great. Thank you. Sorry for all the rustling. I think we're all set up in the courtroom now, and we're ready to hear argument whenever you are ready. Good morning, Your Honors. My name is Rahil Maharaj, and I, along with my co-counsel, Rachel Choi, represent the appellant, Mr. Stephen Brown. I will watch the time and intend to reserve three minutes for rebuttal. The sanctity of the home and family are fundamental rights protected by the Fourth and Fourteenth Amendment. Thus, the government has the burden to obtain a warrant in order to effectuate an in-home arrest or to remove children from their parents. The district court's grant of summary judgment should be reversed because the defendant's actions here were objectively unreasonable under clearly established law, and a jury could find that Mr. Brown's constitutional rights were violated. Today, I will focus on three factors that highlight the unreasonableness of the defendant's actions for the purposes of qualified immunity. First, there's nothing in the record that suggests that the defendant's access to a warrant was limited by any exigent circumstances or emergencies. Second, the defendant's actions of misinforming Mr. Brown about the true purpose of their visit in order to arrest him were entirely preplanned and knowingly false. And finally, at no point did any of the defendants use the time they had here in order to obtain a warrant or properly verify the validity of the protective order. Here, the record presents no exigent... You've been using the word warrant. It really was not a warrant. It was a protective order, wasn't it? Your Honor, here, in order to effectuate an in-home arrest without any exigent circumstances or consent, the officer would have needed a warrant, and similarly, the social workers would require a warrant in order to remove Mr. Brown's children without his permission. But the document at play was a protective order. Yes, Your Honor. There wasn't a lot of time to get a warrant, and when you... I appreciate your argument in the briefing that your position is that the defendants created the exigent circumstances, but the record also says that this is a domestic violence situation, or at least a home that had had 19 different domestic violence calls, which are uniquely dangerous. What about that? How does that factor into your analysis? Your Honor, here, in terms of the removal of the children, this court has already set a high standard in order for the social workers to remove children without a warrant, as noted by this court's decision in Rogers v. County of San Joaquin, which would be that the children would have needed to be in imminent harm, in danger of bodily harm, in the time that it would take to get a warrant. And here, the social workers contacted Mr. Brown in the morning and did not arrive at his home until in the afternoon, showing they had ample time. Well, in order to get a protective order, there would have to be some showing of risk, right? Yes, Your Honor. However, the risk... If you have multiple calls, multiple responses to domestic violence, doesn't that create some exigency in and of itself? Your Honor, here, it's important to note that the five-day referral that the social workers were investigating was for emotional abuse of the children by Tia Taylor, the children's mother. It had nothing to do with Mr. Brown. Well, there was at least one incident of physical violence, wasn't there? Yes, Your Honor. There was one incident. However, here, the standard that the social workers would need to meet would be the standard of an imminent danger of bodily harm to the children, and they simply don't meet that standard here. Well, I mean, once we get to the end, right, and there's no parent in the house because the parent has been arrested, it's hard to see how it's clearly reasonable, but let alone clearly established, that they were just supposed to not take the children at that point to the grandmother. I mean, there's a lot of things that led to that happening, right? But at that point in time, once they remove the kids, there's their young kids and there's no parent there. One is in jail. Both are in jail, I think. Yes, Your Honor. The reason that it is clearly established is in United States v. Driver as well as United States v. Calhoun, this court has established that the government cannot rely on an exigency they themselves create or that is foreseeable from their actions. Here, once the social workers receive the five-day referral and then discover the protective order, they took multiple steps that shows that their actual purpose was to have Mr. Brown arrested and remove the children. They contacted their supervisor in order to arrange for the children to be placed with another family member in anticipation of his arrest. But they had also contacted the Long Beach Police Department and been told there was a protective order protecting the children from contact by Mr. Brown, right? Yes, Your Honor, and they could have used the time that they had from the morning until the afternoon in order to obtain a warrant. They could have also conducted further investigation, which would have led them to the discovery that that protective order was no longer valid. Can I ask you on the – I mean, it seems that once they get to the house, I know that in the district court there was maybe more dispute about what Mr. Brown said, but now it seems to a degree that he did say, come on in, and the argument is, well, when I said that, I didn't mean to come on in and arrest me and to bring a police officer in. So, okay, but the question then becomes, was it clearly established that the social workers and Officer Saldana in that situation would know that they, in fact, could not enter the house? Yes, Your Honor. First, I'll address the social workers. Under United States v. Phillips, the government is not allowed to obtain consent for another purpose. Here, the social workers' actions clearly show that their intention of entering the house was to both remove the children and have Mr. Brown arrested. However, the permission that they received in order to enter the home was for a welfare check. When they contacted Mr. Brown, they did not inform him that they were potentially investigating him for the violation of a protective order. And I think you have some fair points here. I guess the question then becomes, is it really clearly established by the case law? Because as I read some of these cases, the ruses that were deployed in those cases were a bit more extreme than what we have here. Your Honor, it is clearly established. Moreover, under this Court's precedent in United States v. Shibu, consent must be unequivocal, specific, and informed. And it simply wasn't here because the social workers hid the true purpose behind their reason to enter. Finish the thought, and then I have another question. Yes. When it comes to Officer Saldana, he also didn't obtain proper consent. Before he entered the home, Mr. Brown couldn't see him. He couldn't see Mr. Brown. He also neglected to announce his presence. And moreover, as held by this Court in United States v. Bossi, the officer is not able to rely on the consent given to another government official for a different purpose to enter one's home. It's hard to see how Saldana would know any of this. I mean, he goes to the home. He's told there's a protective order. Somebody knocks on the door, and someone says to come on in. It's kind of hard to say that it was actually objectively unreasonable at that point for him to go into the house. Your Honor, it was objectively unreasonable because the consent that had been given was specific to the social workers. On the part of Officer Saldana, he knew that he was there in order to remove the children, and that's his stated purpose in the record. Here it's clear that Mr. Brown had not given his consent for that to occur. And I'd like to emphasize that. He doesn't have to give consent for the officers to remove the children. You don't mean that, do you? No, and this is consent to enter the home. All right. Can we talk about the arrest claim? Because I just, what does the record show in terms of what Officer Saldana did to try to verify whether there was a protective order in place here? Yes, Your Honor. The officer here simply relied on actually after the arrest. He checked the CLETS system, which specifically informed him. After the arrest? Yes, Your Honor. Can we back up? Because I'm trying to get the full chronological sequence in response to Judge Bress's question. My understanding from the record is the first thing he did was he said that he understood there was such an order. Mr. Brown objected and said he had custody, and the officer asked him to go find that order, and Mr. Brown couldn't find it. Isn't that the first step? Yes, Your Honor. The officer, and this is on page 944 of the record, which is the arrest report and the most contemporaneous version of the events, the officer was informed by dispatch that there was a protective order. He then asked Mr. Brown to produce evidence that the protective order was. . . I thought it happened in the other order, that the social workers told him there was such an order. He entered with that understanding. He asked Mr. Brown to produce the custody order. Mr. Brown couldn't. I thought then he went to his car to look at the databases there. Your Honor, in his arrest, he did state that. And that says that he also talked to dispatch. Your Honor, per his arrest report on page 944, he says that he checked on the CLET system after arresting Mr. Brown. Okay. Is it. . . I have. . . And you are correct that he did. Officer Saldana has made that. . . has made that claim in his. . . In SDR 335. I had police dispatch run Stephen Brown for wants and warrants, and then he said dispatch advised that Brown was a restrained person and the children were protected. And you think that communication happened before or after the arrest? The initial communication from dispatch was before. Him checking the CLET system was after the arrest. Thank you for the clarification. So back to Judge Bress' question. The question was, what did he do to verify? Yes. Here, under this court's precedent in Bayer, the officer had the responsibility to ascertain the precise nature and scope of the protective order, and he simply failed to do so here. The CLET system itself only provided a summary of the protective order. It also stated that Mr. Brown did have some visitation rights, which the officer failed to ascertain. Moreover, the CLET system informed the officer that he should not arrest based solely on the CLET system. What he looked at, the summary, was sort of off point. It was talking about the exchange of children from one parent to the other, right? Your Honor, the summary refers to. . . It really wasn't helpful to the officer. Yes, Your Honor. It was not helpful to the officer. The officer could not have ascertained what specific visitation rights Mr. Brown had just based off of the summary. So what else should the officer have done in that situation? Should he have just left, assuming he believed, based on what he was told, that this parent shouldn't be alone with the children? He allows Mr. Brown to try to find the order itself. I don't know about the sequence. We'll sort that out. But assuming, just for a minute, that he went to look at the summary in his car first, what else should he have done? Your Honor, the officer here had ample time to obtain a warrant. As noted by the Supreme Court's decision in Missouri v. McNeely, the prevalence of electronic warrants has made it significantly easier and faster for the government to obtain a warrant. But if they have probable cause, they can arrest on probable cause. Your Honor, the officer needed both probable cause and consent to enter the home. This was an in-home arrest. Well, we're talking about the arrest right now. So is there a difference between arguable probable cause? You're talking, you're responding, referring to probable cause. Is the standard probable cause or arguable probable cause? Your Honor, the standard here is probable cause, and the officer simply didn't establish probable cause to make the arrest because he hadn't fully ascertained the precise nature. There's a probable cause to arrest, but for purposes of your cause of action, it's arguable probable cause, isn't it? Yes, Your Honor, it could be arguable probable cause. He can be wrong. He just can't be unreasonable in order to get qualified immunity. Is that what you mean in response to Judge Antone's question? Yes. Okay. And his actions here were unreasonable because he simply didn't understand the protective order, ascertain the precise scope and nature, and had time to conduct further investigation. That's really the key. Can I forget? You've made this point several times, and I appreciate it, but I think we get that point. Can we tell in this record what he saw when he went out and looked at the databases in the car? Yes, Your Honor. When he looked at the CLETS system, he saw that the— We've got the CLETS, that summary. He could see that? Yes. Could he see anything else? No, he only saw the CLETS summary, which stated that Mr. Brown had— I know what it says. I'll take that. I don't want to do too much here. If I can just get you to answer my questions, and then we'll move along. I'm looking at SCR 498, please. That's the November 9, 2011 protective order. And I think you're telling me he couldn't see that. Is that right? But you're faulting him for not looking at it, or this would have made a difference because box 13 is checked? Your Honor, box 13 was not on the CLETS summary. You're correct. However, the CLETS summary did have— I know what the CLETS summary had. I want to ask you about this one, if I could, please, sir. Okay. So here's my problem. This kind of order is ubiquitous throughout the Ninth Circuit and the state trial courts, but this one is being used in a way that I've not seen before. On line 4, it says the name of the protected persons, and then it lists the three children, not the mother, the three children. And then on line 12, it says that Mr. Brown can't come within 100 yards of those protected people, not the mother, right? And then on line 13, it says that box is checked too, and it says that he may have peaceful contact with the protected persons to exchange kids for purposes of exercising custody. In the past, what I've seen is this type of form order being used where the protected person is the, I'll just say mother, but the other parent, right? And so the restrained person isn't to come within 100 yards of the other parent, except they can hand off the kids, do the exchange of the kids. This order seems to me to be entirely inconsistent because it says the protected persons are the kids, and it says then by checking box 13 he can have contact with the kids. Yes, Your Honor, you're correct. The order is inconsistent. How is this going to clear up anything for the officer who is trying to respond? I mean, in other words, even if he had looked at this and gone beyond clets and looked at this order, what does this order tell him other than that it strikes me as very confusing? Your Honor, at the very least, the order would, with box 13 being checked, if he had seen the full order, it showed that there was another family court order that he should have gone to. Moreover, it showed that Mr. Brown did have visitation rights. You're correct that the order itself is slightly confusing. Well, but it also says, in fairness, and I just want to have a chance to respond to this, it also says that these kids have a protective order as the dispatch informed them, protecting them from Mr. Brown, and Mr. Brown wasn't to come within 100 yards of them. That's what box 12 says. Yes, Your Honor. I think the order is a bit confusing. However, if the officer had precisely ascertained and then conducted further investigation, he would have potentially discovered that the order was invalid. However, even the order on its face granted visitation rights and permitted him having contact with the children. Okay. And then I'll let you go, so your day is going to improve here in just a minute. But SER 498 is not something that he saw. The officer did not see this. Yes. All right. I'm okay for now. Because he could not see it, right? Yes. Thank you. You're out of time. When you come back, we'll put another two minutes on the clock for you so you can plan accordingly. We'll hear from opposing counsel, please. Mr. Peters, would you like to hear from DCFS first or the city and Saldana? I wasn't told you're going to be sharing time. Understood. I just wanted to clarify whether I'd be going first or … Go right ahead. Well, who else is going? Because I … We don't have any other lawyer. We don't have any other indication that anyone else is going to participate. My apologies, Your Honors. May it please the Court. Your Honors, appellees would submit that as far as the entry is concerned … Who do you represent? Do you represent everybody? I'm sorry, Your Honor. Do you represent everybody here? No, Your Honor. I am appearing on behalf of the appellee, Eduardo Saldana. What about the social workers? The social workers are represented by another attorney. I was under the impression that counsel would be appearing for this hearing this morning. We don't have any indication of that. Okay. Please go right ahead. Thank you. Regarding the entries, Your Honors, I believe that this case is clearly distinguishable from the Bossie and the Phillips case. Unlike the agents in both the Bossie and Phillips case, Saldana, Officer Saldana, was not part of an orchestrated plan to deceive Brown. Let's move to the arrest just with a limited time. Let's move to the arrest. And the chronology is now somewhat confusing to me based on some of the comments of your opposing counsel. But I had thought from his separate statement of facts that he went into the house, he told Mr. Brown that there was a protective order. Mr. Brown said that is not correct. He was given time to go and look for it. Saldana went back to the car, checked maybe the Kletz summary. I'm not sure if he checked anything else and then decided there's a protective order. Is that your understanding or is there something different here? It's fairly accurate, Your Honor. I just want to return first to when he arrives at Mr. Brown's residence, he does contact dispatch to run a wants and warrants check on Mr. Brown. Dispatch replies and confirms that Mr. Brown is a restrained party. And the manner in which dispatch was able to confirm that the restraining order existed was by searching the Kletz databases. While that is not spelled out specifically in the police report, that is the database that the Long Beach Police Department utilizes and other law enforcement agencies utilize to verify information such as this. So after confirming with dispatch that Mr. Brown was in fact a restrained party, he approaches Mr. Brown's residence. Once contact is made between he and Mr. Brown, he advises Mr. Brown that there is an active protective order restraining him from being with his children. Mr. Brown protests and says that there has been a modification to the protective order. And so at this time, Officer Saldana permits Mr. Brown time to search his apartment for the modification. And despite the admonition that Mr. Brown keep any modification on his person, Mr. Brown was unable to produce one. And because of Mr. Brown's adamantly contesting the modification, Officer Saldana did return to his police vehicle and again searched the Kletz and JDIC databases. And the summary of what the printout is on page 347, that's the third volume of the supplemental excerpts of record. So you disagree with the sequence of events as described by opposing counsel, is that right? I believe that he had confirmation prior to approaching the residence. And the implication that he did not confirm that there was a protective order prior to approaching the residence, I do dispute that. How about looking at the summary, the Kletz report in the card, did that happen before or after the arrest? The actual, the personal review of him of the specifics of the protective order, I believe was after the arrest. The summary? The summary. The Kletz summary that we have that we were just referring to, we have that, it's one page, I'm just really interested in the answer to Judge Anton's question. My understanding was that he saw that before the arrest, is that wrong? There was a couple of occasions, Your Honors, where Officer Saldana did attempt to verify. Did the verification, whatever it was, happen before the arrest, or was there an arrest followed by some later attempts to verify? Your Honor, by verification, he verified that an active protective order was in effect prior to arresting Mr. Brown. How did he do that? Just to be really clear, which of these steps were taken before the arrest, please? Your Honors, I believe he contacted dispatch and he confirmed that there was an active protective order. He got confirmation from the DCF social workers that there was a protective order. When Mr. Brown insisted that there was a modification, he returned to his vehicle and read the Kletz printout of the conditions of that protective order. He also reviewed Kletz after the arrest. It was before and after. Is it your understanding, do you agree with opposing counsel that he would not have had access to what, for us, is SER 498? That's the November protective order. We would have the Kletz summary, but not the actual order. Is that right? Your Honors, under these circumstances, I'm not sure whether he had access to the actual protective order that you're referencing. Although, in his police report, Officer Saldana states that he actually reviewed the protective order itself. Do you contend that that happened? Your Honor, I can't give you, I don't want to misstate the evidence there. I believe the Kletz readout accurately summarizes the pertinent information in that protective order. Could I ask you, oh, forgive me. No, go ahead. On this 498, this is the actual order. I don't know if he saw it or not. I'm trying to figure out whether it would have helped. Because it indicates that Stephen Brown was, indeed, restrained from contacting the three children. And then we've looked at boxes 12 and 13. You heard me talk about this with opposing counsel. 12 says he can't come within 100 yards of the protected persons. It's not the mother, it's the children. And then 13 says, but, he can have contact with the protected person, which would make sense if that were an adult. He can have contact with the person to exchange the children for purposes of custody, visitation. But here there's no indication that he's restrained from contacting the mother. He's restrained from contacting the children. That's my reading as well, Your Honor. Are these used in a different way than in the way that I've just described, seeing them in other jurisdictions? Or how do I make sense of this order? Your Honor, my understanding of box 13 being checked is that in the event there is a court-ordered visitation between Mr. Brown and his children, he may have contact with them. But, again, there was no representation by Mr. Brown or anyone for that matter that Mr. Brown being with his children on the day of the incident was pursuant to some court-ordered visitation period. That's my understanding. Box 13 clearly allows him to have contact with his children if there's a court order giving him custody or visitation with his children. It's just that the same order prevents him from having contact with those children. It says he has to stay 100 yards away from them. So, in this type of form order, the way I've seen it in the past, many, many times, is that the protected person is the other spouse with whom you have to have some contact to pass the kids back and forth. That's not how this form was filled in. And I'm just wondering, I've given you both a chance to try to clear it up for me, but maybe you've done the best you can. But if you could shed any more light on it, that's the part that I find very troubling here. I cannot provide any further clarification of the court, but I would argue, Your Honor, that... On the CLETS summary page, what does it mean at the top when it says do not arrest or detain based solely on this response? I think it means essentially what it states, Your Honor. But, again, here we had confirmation from the Department of Children and Family Services that Mr. Brown was a restrained party. And DCF is tasked with monitoring these types of custody arrangements and checking on the welfare of children and ensuring that parties are upholding their obligations under such orders. And then we also have Mr. Brown, who despite claiming there was a modification, was unable to produce any documentation from that court or the court order that provided him with visitation or some sort of custody arrangement. And then we have Officers Saldana who contacted dispatch and looked through the CLETS database and... Correct, Your Honor. Upon arriving at the location, he contacted dispatch and ran Mr. Brown. So if the police officer had seen SCR 498, I think there'd be a lot of room for understanding the confusion. But if he only saw the CLETS report circling back to Judge Bress's question, it has an unambiguous statement in it, if you're looking at the facts in the light most favorable to Mr. Brown, that says basically, don't arrest based on this alone, doesn't it? I'm paraphrasing, but what about that unambiguous statement? As I was previously stating, Your Honor, I mean, it wasn't just on that notification alone. He had confirmation from an incredible, reliable secondary source, DCFS, the social workers, who had presumably done their due diligence. And we relied on their representation that there was an active protective order. Well, forgive me for interrupting, but he did testify that he got confirmation from them. But what he said, I think, is that they gave him a copy of the order, and both the social workers said they never had a copy of the order. So that doesn't seem to be considering the facts in light most favorable to Mr. Brown. Your Honor, even if Saldana concedes that no protective order was given to him, I think there is ample due diligence on his part. And if there was any oversight, I think it was a reasonable mistake of fact. And based on Your Honors and my confusion about the actual protective order itself, a reasonable mistake of law. And I believe that at a minimum, there is no clearly established law where an officer acting under similar circumstances was held to violate the Fourth Amendment under these circumstances. He said that he confirmed the active protective order with the social workers, but was it the officer or just the social workers who also contacted the Long Beach Police Department? The social workers were the ones who contacted the Long Beach Police Department to request an officer assist. But he didn't contact the dispatcher after that? He did, Your Honor. Once arriving at the location at Mr. Brown's residence, he did contact dispatch to verify that Mr. Brown did in fact have an active protective order against him. Where in the record are you looking for that? Your Honor, I'll direct you to S.E.R. 337 and 336. Is there anything further, Counsel? Mr. Peters, is there anything further? Yes, Your Honor. We would just submit that appellants contend that Officer Saldana should have done more, but they don't even specify what more he could have done under the circumstances. These are children's well-being that he is encountering. And to expect Officer Saldana to just go chase down court orders at the courthouse seems to be unreasonable, especially in light of the circumstances he confronted. He allowed Mr. Brown to provide any sort of exculpatory evidence by way of the modification. He verified with DCFS that this protective order was active. He used the resources at his disposal. And, Your Honor, we believe that any mistake made on his behalf was completely reasonable. And we would ask that the court affirm the district court's order and uphold the judgment. Thank you. Thank you. We'll hear from opposing counsel, please. You have two minutes. Your Honor, a few points on rebuttal. First, I'd like to highlight that here, at summary judgment, the facts must be taken in light, most favorable to Mr. Brown. Your Honors are correct that there seems to be a dispute in terms of whether the Kletz system was checked after or before, but in Officer Saldana's arrest report, as previously noted on page 944, he states that after he arrested Mr. Brown, placed him in handcuffs, he then went to go read the protective order. And this action was unreasonable. Opposing counsel posed the question, what Officer Saldana could have done? Well, he could have checked the Kletz system himself prior to arresting Mr. Brown. He could have also used the time that he had to obtain a warrant. Here, there's nothing in the record that suggests that the children were in any sort of imminent harm. Officer Saldana had ample time to investigate further and obtain a warrant. Moreover, I'd like to highlight that this was a misdemeanor offense, and per United States v. Johnson, the court stated that this would justify an in-home arrest only in the rarest of circumstances. And finally, the officer simply did not meet his burden here to fully ascertain the precise nature and scope of the arrest. This case is not about second-guessing split-second decisions that the officer made. Here, it's important to note that the officer had time. He could have taken these additional steps to verify this order. If he had, my hang-up is that if he had and looked at the November order, it seems to me it would have told him that there is indeed a protective order in place protecting the children and requiring Mr. Brown to stay 100 yards away. Should I factor that into my analysis? Your Honor, here, the full protective order referenced the other family law order, and if the officer had conducted further investigation, he could have potentially found out that that protective order was no longer valid, the one that he initially relied on. Moreover, it's important to note here that the Fourth Amendment protects procedure. And here, the fact that Mr. Brown was arrested first and then the order was checked after violated his constitutional rights. And for those reasons, this court should reverse. Further questions? No. It looks like that we don't have further questions. Thank you both for your arguments. We'll take that matter under advisement. Thank you. Counsel, before you leave, I want to thank you for participating in our pro bono program. Judge Bress is just reminding me, and I've been remiss in not extending my thanks. We appreciate it.
judges: CHRISTEN, BRESS, Antoon